## IN RE REPORT OF COMMISSIONERS, &c., OF ELIZABETH.

1. For the purposes of legislation cities constitute a class, and a law applicable to cities only is not in contravention of the constitution.

2. The act entitled "An act concerning the settlement and collection of arrearages of unpaid taxes, assessments and water rates or water rents in cities of this state, and imposing and levying a tax, assessment and lien in lieu and instead of such arrearages, and to enforce the payment thereof, and to provide for the sale of lands subjected to future taxation and assessment" (*Pamph. L.* 1886, *p.* 149), contains two classes of provisions—first, those which relate to taxes, assessments.

In re Commissioners of Elizabeth.

and water rates levied and made anterior to the passing of the act, and which come within the jurisdiction of the commissioners provided for therein; and, second, a provision for the lien of taxes and assessments thereafter levied and assessed, and for the sale of premises for such taxes and assessments by city officials. *Held*, that these two features combined in one statute do not give the act the quality of an act with a two-fold object, and hence the act is not in contravention of the constitutional provision that every act shall embrace but one object.

3. Where the subject of legislation is of a general character, all matters reasonably connected with it which are appropriate to accomplish or facilitate the object of the act may be embraced in it without infringing the constitutional interdict which prohibits the intermixing of such things as have no proper relation to each other.

4. The act, so far as it relates to the powers and functions of the commissioners, applies only to taxes, assessments and water rates " levied or imposed, or attempted to be levied or imposed, on any land prior to the passage of the act." All taxes, assessments and water rates of this description are placed under the jurisdiction of the commissioner, whether they were levied and assessed in strict conformity with the laws by which they were imposed, or were subject to be vacated for irregularities, illegalities or other imperfections in the proceedings.

5. The power to correct, amend and validate taxes and assessments by curative legislation, or to provide for re-levy or re-assessment, where the tax or assessment is inefficacious on account of illegalities in the levy or assessment, is an essential attribute of the sovereign power of legislation, and is necessarily without any limit except such as is imposed by constitutional restrictions or limitations, if the tax or assessment be one that the legislature could authorize.

6. Unpaid taxes and assessments are not excluded from adjustment and the proceedings thereon for collection prescribed by the act, by reason of the fact that they were levied under valid laws.

7. A tax laid by authority of law, or an assessment for benefits conferred by a local improvement, creates a duty and obligation which may be enforced by any means which the legislature may from time to time adopt. Individuals upon whom, or against whose property, such duties and obligations arise, have no vested right in the remedy which was in force when the duty or obligation arose. Until the tax or assessment is satisfied and the discharge of the premises therefrom, in virtue of the law then in force, has become a vested right, there is no contract with the public to be violated by the adoption of more stringent measures to enforce payment of these public dues.

8. The charter of Elizabeth provided for a sale of lands for taxes and assessments for a limited term. This act provides for a sale in fee. *Held*, that no constitutional right or privilege of the land-owner was

invaded by this provision for the collection of the adjusted taxes and assessments.

9. The liability of lands to assessments for local improvements springs from the construction of an authorized public work, which confers a special benefit upon lands. It arises when the work is performed, and the assessment proceeding is merely the determination of the amount which, within the limit of such imparted value, shall be returned to the public. A change in the ownership of lands benefited by the improvement produces no effect upon the ability of the corporate authorities to make the assessment. The assessment, when made, and a re-assessment, if prior assessments are set aside, relate back to the time the improvement was begun. A purchaser taking title after that event takes subject to the power of the municipal body to make, and of the legislature to authorize, assessments and re-assessments, and the subsequent purchaser's title will be subject to these burdens whenever they may be imposed.

10. Taxes for general purposes are upon a different footing. Such taxes are burdens laid upon persons or property for governmental ends. The right to subject lands to a lien for the payment of these impositions does not spring from a special benefit conferred upon the lands charged with the burden. The lien is wholly the creature of positive law.

11. The charter of Elizabeth makes taxes for general purposes assessed on persons or property a lien on the lands of the person against whom such taxes are assessed, notwithstanding any devise, descent, alienation, mortgage or other encumbrance, but it prescribes a limit of two or four years, according to circumstances, for the duration of the lien. The charter also provides for the extension of the duration of this lien by a sale of the land at public auction and a certificate of sale thereupon made and recorded. The lien of taxes arising in virtue of the charter from the fact of the assessment, expires at the expiration of the time limited, and a certificate of sale, to be operative to continue the lien, must be made before the expiration of the period so limited.

12. By the city charter the certificate of sale does not transfer or divest the title. Title is not divested until a declaration of sale is executed and delivered, and also recorded in the county clerk's office. In the meantime, however long the declaration of sale and the recording of it may be delayed, the owner or his representatives may redeem.

13. A certificate of sale made to the city maintains its lien for taxes and assessments in *statu quo*. Everything is *in fieri* until a declaration of sale, duly executed and recorded, divests the title of the owner. Until that is accomplished the taxes and assessments are still unsatisfied and unpaid, and as such are subject to adjustment under this act.

14. If taxes are unpaid and there was no change of ownership before this act was passed, it was competent for the legislature to revive and restore the lien which had lapsed, or even to create a new lien for the

same, as against an owner who was owner when the taxes were levied, no right of third persons having intervened. The office of certificates of sales in maintaining and continuing the lien for taxes becomes of consequence only where a change in title has intervened.

15. A general act passed in 1879 made it unnecessary to sell delinquents' lands year after year, and provided that taxes subsequent to the first sale should be paid to effect a redemption. *Held,* that outstanding certificates of sale were valid warrants in the hands of the city for taxes levied after the act of 1879 went into effect, as well as those for which the sales were originally made, and all such taxes should be included by the commissioners in their adjustment without regard to any intermediate change in title.

16. The charter provided that at sales for taxes or assessments the prop·erty should be struck off to the city only in the event that no purchaser should be found willing to take the property for any term and pay the amount of such tax or assessment and interest, cost and expenses, and that in such an event the property should be struck off to the city for the term of fifty years. At sales for taxes for the years from 1872 to 1878 inclusive, lands were struck off to the city for unpaid taxes. Through a misapprehension of the law the comptroller made his certificates for the term of nine hundred years. *Held,* that certificates of sale made to the city for a term greater than fifty years, as vouchers for the city's title, are invalid and liable to be set aside on *certiorari* or removed as clouds upon title. But these certificates of sale were nevertheless evidence that the premises had in fact been struck off to the city for the taxes mentioned in them, and when regularly recorded the record was notice to any proposed purchaser from the original owner that the premises had been struck off to the city. A purchaser having notice of such facts as the record of these certificates furnished took his title at the risk that the legislature might exercise its power to cure such defects and give validity to the certificate. .

On case certified from the Union Circuit Court.

This certificate brings up for the advisory opinion of this court certain questions arising under an act passed March 30th, 1886 (*Pamph. L.,* p. 149), entitled "An act concerning the settlement and collection of arrearages of unpaid taxes, assessments and water rates, or water rents, in cities of this state, and imposing and levying a tax, assessment and lien in lieu and instead of such arrearages, and to enforce the payment

thereof, and to provide for the sale of lands subjected to future taxation and assessment."

The preamble recites that arrears of unpaid taxes, assessments and water rates in cities of this state have accumulated to the amount of many millions of dollars; that the validity of some of such unpaid taxes, assessments and water rates has been, or may be, called in question by reason of some irregularity, omission or defect in the procedure instituting, laying or imposing the same, or because of the unconstitutionality of the laws or methods under which such proceedings were had or taken; that several cities have issued and sold bonds or obligations in anticipation of the collection, or on account of the arrears of such unpaid taxes or water rates, and have issued and sold their bonds to obtain the money paid for the improvements for which the assessments so in arrears were imposed, or attempted to be imposed, and the said improvements have been completed, and the property assessed therefor has been benefited thereby; that it has been found that the cities of this state have no adequate means to enforce the collection of taxes and assessments by sale of the lands upon which the same have been or may be imposed.

The act provides for the appointment by the Circuit Court of commissioners, who are styled commissioners of adjustment. It declares that these commissioners shall have "power and jurisdiction * * * in all cases when any tax, assessment or water rate levied or imposed, or attempted to be levied or imposed, on any land therein prior to the passage of the act, remains unpaid and in arrears, to examine into and fix, adjust and determine, as to each parcel of land, how much of such arrearages and subsequent taxes, assessments or water rates, if any, ought, in the way of tax, assessment or water rate, in fairness, equity and justice to be laid, assessed and charged against and actually collected from said land for or on account of said taxes, assessments or water rates, and claims for local improvements heretofore made."

It further provides that the commissioners, in dealing with the said arrearages as matters of fact, according to their judg-

ment of what shall be equitable, fair and just, shall treat the same without regard to any supposed want of jurisdiction, invalidity, irregularity or defect in any of the proceedings had for the levying, imposing or confirming of any of said taxes, assessments or water rates ; that the amount of taxes, assessments and water rates for which certificates of sale have been given to and are held by the city, whether such sales are invalid or not, shall be deemed to be in arrears, within the meaning of the act, and to have been so in arrears from the date when said taxes, assessments and water rates were assessed, levied or confirmed, or attempted to be assessed, levied or confirmed ; that in ascertaining the amount that should be assessed and charged on any of the said lots, tracts or parcels of land, the said commissioners, in dealing with the assessments or claims for street or sewer improvements, shall not assess or charge any lot, tract or parcel of land for or on account of any such improvement in excess of the benefit it derived therefrom at the time the said improvement was made, or in excess of its due and equable proportion thereof, with interest.

The commissioners are required to make report to the court, and it is enacted that the report, when confirmed by the court, "shall be final and conclusive upon the said city, and upon all persons owning or having any interest in or lien upon the said lands, and against all persons whomsoever, and the amount so fixed, determined, certified and confirmed in each case shall thereupon become and be a valid and binding tax, assessment and lien on the lands so designated, in lieu and instead of all outstanding claims of the city for arrearages of taxes, assessments or water rates levied or confirmed, or attempted to be levied or confirmed prior to the making of the said report, and shall be a valid lien on said lands, having priority over all other liens, claims or demands whatsoever, except taxes, assessments or water rates levied after the making of the said report."

Provision is made for the enforcement of this lien by a public sale to the highest bidder, but not for less than the

amount certified in the report, with interest and costs. A certificate of sale is to be given, and after six months a deed which shall convey a good and sufficient title to the premises in fee simple, free from all encumbrances except taxes, assessments and water rates levied after the confirmation of the report of the commissioners.

It is further provided that the proceeds of sale when collected shall be applied to the payment of the expenses of carrying out the act, and to any indebtedness to which the original tax, assessment or water rate was specifically pledged, and to the payment of other debts of the city, and not to any other use, while any of the bonds of such city remain unpaid.

The thirteenth section relates to the lien of taxes and assessments levied and made after the act was passed, and to proceedings for sales by city officials to discharge the same, a subject not within the jurisdiction of the adjustment commissioners.

This summary embraces those provisions of the act which are necessary for the present investigation.

Argued at February Term, 1887, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and REED.

For the objectors, *Alward & Parrot, W. P. Wilson* and *Geo. Putnam Smith.*

*Contra, Frank Bergen.*

The opinion of the court was delivered by

DEPUE, J.    This case was certified to this court for its advisory opinion on certain questions set out in the certificate.

First, whether the act of March 30th, 1886, complied with those constitutional requirements which are essential to a valid act of legislation on this subject.

The act is special in one sense. It applies only to cities. It has been finally settled by the Court of Errors that for the purpose of legislation, cities constitute a class, and that a law applicable to cities only is not in contravention of paragraph

In re Commissioners of Elizabeth.

11 of article 4 of section 7 of the constitution. *New Brunswick* v. *Fitzgerald*, 19 *Vroom* 457. The act applies to all the cities of this state in every particular which concerns the adjustment of taxes, assessments and water rates, and the sale of lands for the payment of the same. The only provision with the semblance of a special feature is that which sets apart the proceeds of taxes, assessments and water rates so adjusted for the payment of any indebtedness for which the original taxes, assessments or water rates may have been specifically pledged, and that provision does not concern owners of lands affected by the action of the adjustment commissioners. This provision was designed for the protection of the creditors of cities, and applies to all cities which have contracted debts on the pledge of their revenues.

The act contains two classes of provisions: (1) those which relate to taxes, assessments and water rates levied and made anterior to the passing of the act, and which come within the jurisdiction of the commissioners; and (2) a provision for a lien of taxes and assessments thereafter levied and assessed, and for the sale of premises for such taxes and assessments by city officials. These two features, combined in one statute, do not give the act the quality of an act with a two-fold object. The paragraph in the constitution which prescribes that every law shall embrace but one object is preceded by a recital in exposition of that constitutional requirement, which is " to avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other." *Const.*, art. 4, § 7, ¶ 4.

The statute relates to taxes and assessments, a subject which in its nature would embrace the designation of persons and property to be subjected to taxation, the mode of levy or assessment and collection, and the appropriation of the proceeds. An act which comprises provisions to effect such essential parts of a system of taxation will still be a unit; for where the subject of legislation is of a general character, all matters reasonably connected with it, which are appropriate to accomplish or facilitate the object of the act, may be em-

braced in it without infringing the constitutional interdict which prohibits the intermixing of such things as have no proper relation to each other. *State* v. *Town of Union*, 4 *Vroom* 350 ; *State* v. *Newark*, 5 *Id.* 236, 239 ; *State* v. *Hammer*, 13 *Id.* 435; *Snipe* v. *Shriner*, 15 *Id.* 206; *Payne* v. *Mahon*, *Id.* 213; *Vail* v. *Easton & A. R. R. Co.*, *Id.* 237 ; *Bergen Saving Bank* v. *Township of Union*, *Id.* 599 ; *Randolph* v. *Wood*, 20 *Id.* 85 ; *Kirkpatrick* v. *New Brunswick*, 13 *Stew. Eq.* 46 ; *Montclair* v. *Ramsdell*, 107 *U. S.* 147 ; *Water Commissioners* v. *Dwight*, 101 *N. Y.* 9 ; *Matter of Knaust*, *Id.* 188 ; *Carter Co.* v. *Sinton*, 120 *U. S.* 517.

The legislature may make the title of an act restrictive, and so preclude matters which otherwise might be included in one act. *Grover* v. *Trustees of Ocean Grove*, 16 *Vroom* 399. In this act the title is expressed with more particularity than is necessary, but nevertheless it expresses the object of every provision contained in it.

The certificate brings up only those parts of the act which relate to the powers and functions of the commissioners. So far as concerns those parts of the act, it applies only to taxes, assessments and water rates " levied or imposed or attempted to be levied or imposed on any land prior to the passing of the act."

The power of the legislature to correct, by retroactive legislation, errors and defects in levying and imposing taxes, whether such errors or defects arose from want of power in taxing-officers or illegality or irregularities in their proceedings, or from any other cause, or to re-impose by a re-assessment taxes which were inefficacious by reason of irregularities in the proceedings for levying or collecting, or which have been swept away before collection by repeal of the law under which they were laid, is thoroughly established. *State* v. *Reed*, 2 *Vroom* 133 ; *Cadmus* v. *Fagin*, 18 *Id.* 549 ; *Stew. Dig., p.* 822, § 401.

It is equally well settled that the legislature possesses like powers by retroactive legislation over assessments for benefits derived from local improvements either to amend defects and

irregularities or to provide for a re-assessment where the original assessment has failed, either on account of the unconstitutionality of the law by which it was made or by reason of irregularities or illegality in the method of making the assessment. *Mayor, &c.,* ads. *State, Battin et al., pros.,* 3 *Vroom* 453 ; *State, Doyle, pros.,* v. *Newark,* 5 *Id.* 236 ; *Mills* v. *Charlton,* 29 *Wis.* 400 ; *S. C.,* 9 *Am. Rep.* 578 ; *Edwards* v. *Jersey City,* 11 *Vroom* 176 ; *Elizabeth* v. *Meeker,* 16 *Id.* 157 ; *Righter* v. *Newark, Id.* 104.

The power to correct, amend and validate taxes and assessments by curative legislation, or to provide for relevy or reassessment, where the tax or assessment is inefficacious on account of illegalities in the levy or assessment, is an essential attribute of the sovereign power of legislation, and is necessarily without any limit except such as is imposed by constitutional restrictions or limitations, if the tax or assessment be one that the legislature could authorize. *Cooley on Taxation* 229 ; *Thompson* v. *Lee Co.,* 3 *Wall.* 327 ; *Tifft* v. *City of Buffalo,* 82 *N. Y.* 204.

The many instances in which areas of assessment for local improvements have been enlarged by retroactive legislation so as to comprise lands not within the limits prescribed when the improvement was authorized and executed, are practical illustrations of the power of the legislature over these subjects.

The act does not purport to confer on the commissioners the legislative power of taxation. It gives them no power to levy taxes or to make original assessments. Their power and jurisdiction are confined to taxes and assessments which had previously been levied or imposed, or attempted to be levied or imposed. Nor does the act confer the power to increase the *quantum* of any particular tax or assessment above the sum originally fixed, and interest, costs and expenses. The commissioners are empowered to deal only with the arrearages of prior taxes and assessments unpaid, the specific amount of each of which had previously been declared and levied or imposed, or attempted to be levied or imposed. The functions of these officers are to fix, adjust and determine how much of

such arrearages and subsequent taxes and assessments ought, in fairness, equity and justice, to be laid, assessed and charged against and actually collected from the particular lands for and on account of such taxes, assessments and water rates, and claims for local improvements theretofore made. In discharging their functions the commissioners may reduce the amount of such prior taxes and assessments, but cannot in any case increase the sum of the same as originally fixed, except in interest, costs and expenses. That this is the import and scope of the act is made apparent by the title of the act, its preamble, and conspicuously by sections 2, 3 and 9.

All taxes, assessments and water rates of this description are placed under the jurisdiction of the commissioners, whether they were levied and assessed in strict conformity with the laws by which they were imposed, or were subject to be vacated for irregularities, illegalities, or other imperfections in the proceedings. This latter class of assessments, taxes and water rates is cured by legislative authority of such defects and imperfections as are within the legislative power, by the mandate in the second section that the commissioners shall treat the same without regard to any supposed want of jurisdiction, invalidity, irregularity or defect in the proceedings for levying, imposing or confirming the same, and by the third section such taxes and assessments are made valid and binding for the amount fixed and certified by the commissioners. Assessments theretofore made for local improvements are restrained or brought within constitutional limitations by the interdict of any charge upon any lot, tract or parcel of land, in respect of the improvement, in excess of the benefit derived therefrom, or in excess of the due proportion thereof and interest. When the commissioners have, in the performance of their duties, fixed, adjusted and determined how much of those arrearages ought, in their judgment, in fairness and justice, to be charged against and collected from the lands on which such taxes, assessments and water rates were imposed, the legislature has provided that the sum they determine upon shall be in lieu of such arrearages, and be a lien on the premises in the place

of the lien which had been imposed by the laws under which the original taxes, assessments and water rates were levied and imposed. The sums reported respectively by the commissioners are not new taxes or assessments. Nor is the lien provided by the act a newly created lien. These amounts are simply adjustments of the arrearages of antecedent taxes and assessments, and the lien under the act is the adjustment of a pre-existing lien, modified to conform to the sum for which the premises shall remain charged.

Acts of the legislature dealing in this manner with the revenues of municipalities are not uncommon in this state. The act passed in 1873, entitled "An act to adjust unpaid assessments in Jersey City" (*Pamph. L.* 1873, *p.* 442), is an example of such legislation. And this power has been recognized by the courts. *Cleveland* v. *Board of Finance*, 9 *Vroom* 259; *Skinkle* v. *Essex Road Board*, 18 *Id.* 93; *S. C.*, 20 *Id.* 65. The public cannot complain, and the land-owner has no ground of complaint. In validating these taxes and assessments the legislature exercised a legitimate power. In allowing an abatement thereof to what, in the judgment of the commissioners, the owner ought, in equity and justice, to pay, there is in fact a concession in his favor made in respect of his former delinquency.

Nor is any constitutional right or privilege of the land-owner invaded by the provisions for the collection of these adjusted taxes and assessments. The charter of Elizabeth provided for a sale of lands for a limited term. This act provides for a sale in fee. The proceedings for enforcing the payment of taxes and assessments is wholly in legislative discretion. A tax laid by authority of law, or an assessment for benefits conferred by a local improvement, creates a duty and obligation which may be enforced by any means which the legislature may from time to time adopt. Individuals upon whom, or against whose property, such duties and obligations arise, have no vested right in the remedy which was in force when the duty or obligation arose. The legislature may provide other methods of collection or for enforcing payment

which were not at that time in existence. Until the tax or assessment is satisfied and the discharge of the premises therefrom, in virtue of the law then in force, has become a vested right, there is no contract with the public which is to be violated by the adoption of more stringent measures to enforce payment of these public dues.

We find nothing in this act with respect to the proposed adjustment of the arrearages of the taxes and assessments in question, or in the method adopted for collection, which violates constitutional prescriptions or limitations.

Second, whether taxes and assessments levied in the city of Elizabeth prior to the passage of the said act, according to valid laws and still unpaid, can be re-assessed by the said commissioners.

It has already been said that the act brings within the jurisdiction of the commissioners all taxes, assessments and water rates levied or imposed, or attempted to be levied or imposed, which are in fact unpaid. Unpaid taxes or assessments are not excluded from adjustment and the proceedings thereon for collection prescribed by the act, by reason of the fact that they were levied under valid laws.

The charter of the city of Elizabeth, passed March 4th, 1863 (*Pamph. L., p. 109*), provides that taxes shall be and remain a lien on lands for the space of two years from the time the assessment was made, notwithstanding any devise, descent, alienation, mortgage, or other encumbrance. Section 73. By two supplements of April 1st, and April 2d, 1869, this lien was enlarged to four years from the first Wednesday in April. *Pamph. L.* 1869, *p.* 1092, § 7; *Id., p.* 1255, § 5. The charter provides also for the collection of taxes and assessments by a sale at public auction of lands whereon the said taxes or assessments shall have been imposed or may be a lien, for the lowest term, not exceeding fifty years, for which any person will take the same and pay the amount of such taxes or assessments, interest and costs; and if no purchaser on these terms can be found, then that the property shall be struck off to the city for the term of fifty years. Section 83.

By a supplement passed April 4th, 1873, the limitation of fifty years in case of a sale to an individual purchaser was repealed, and a sale to such a bidder for the shortest term for which he would take the property and pay the taxes or assessments, interest and costs, was authorized—the limitation of fifty years being retained when the property was struck off to the city. *Pamph. L.* 1873, *p.* 778, § 22; *Schatt* v. *Grosch,* 4 *Stew. Eq.* 199; *Morgan* v. *Elizabeth,* 15 *Vroom* 571. Prior to 1878 it was the custom of the city to sell year by year for taxes. In 1879 a general law was passed making it unnecessary to sell delinquents' lands year after year, and providing that taxes subsequent to the first sale must be paid to effect a redemption. *Pamph. L.* 1879, *p.* 298.

By section 83 of the city charter, when premises set up for sale for taxes or assessments were sold to a purchaser or struck off to the city, a certificate of sale was required to be made. Section 84 provided for recording such certificate of sale in the office of the city clerk, and declared that the certificate *should constitute a lien upon the lands and premises therein described after the same should be recorded.* Section 87 provided for redemption by the owner or any person having a legal or equitable right in the premises within two years from the time of the sale. If no redemption was effected, the city council, by section 88, was required to execute a declaration of sale, which, when recorded in the county clerk's office, operated as a conveyance of the lands and premises for the term for which the same were sold. Until the declaration of sale was recorded redemption was allowed, although the period of two years from the time of the sale had expired.

A statement of these facts is necessary to an understanding of the third, fourth and fifth questions certified, which are in these words:

Third, whether land annually struck off to the city of Elizabeth, for the term of nine hundred years, at sales for unpaid taxes which were regularly assessed and levied prior to the year 1879, in cases where certificates of such sales were

made to, and are now held by the city, can be re-assessed for or on account of such taxes by the said commissioners.

Fourth, in cases where taxes have been regularly and annually levied upon land in the city of Elizabeth since the year 1878, and such land has been struck off to the city for the term of fifty years at sales for unpaid taxes levied in the year 1879, and certificates of such sales have been made to and are now held by the city, can the taxes levied since the year 1878 be re-assessed by the commissioners?

Fifth, where land has been struck off for taxes, as stated in the preceding question, can the commissioners re-assess the same for or on account of unpaid taxes levied prior to the year 1879?

These propositions refer to taxes only, and to cases where property was struck off and the certificate of sale made to the city.

By the city charter the certificate of sale does not transfer or divest the title. The certificate, by section 84, after it is recorded, constitutes simply a continuance of the original lien. Title is not divested until a declaration of sale is executed and delivered, and also recorded in the county clerk's office. In the meantime, however long the declaration of sale and the recording of it may be delayed, the owner or his representatives may redeem.

A certificate of sale made to the city in effect maintains its lien for taxes and assessments *in statu quo.* Everything is *in fieri* until a declaration of sale, duly executed and recorded, divests the title of the owner. Until that is accomplished, the taxes and assessments are still unsatisfied and unpaid, and, as such, are subject to adjustment under this act.

The second section of the act expressly declares that the amount of taxes, assessments and water rates, for which certificates of sale have been given to and are held by the city, whether such sales are invalid or not, shall be deemed to be in arrears within the meaning of the act, and to have been so in arrears from the date when said taxes, assessments and water rates were assessed, levied or confirmed, or attempted

to be assessed, levied or confirmed. If taxes are unpaid, and there was no change of ownership before this act was passed, it was competent for the legislature to revive and restore the lien which had lapsed, or even to create a new lien for the same, as against an owner who was owner when the taxes were levied—no right of third persons having intervened. In this situation of the title, it would be unimportant to consider the effect of certificates of sales made for a longer term of years than was allowable in cases where the property was struck off to the city.

The Chancellor, in his opinion, in *Kirkpatrick* v. *New Brunswick*, 13 *Stew. Eq.* 46, conceded that the legislature might revive against the original owners the lien for taxes which had expired by its own limitation. The effort to enforce the lapsed lien failed because there was no legislative revival of the lien. In *Holden* v. *Eaton*, 7 *Pick.* 15, it was held that the design of such a limitation was to prevent the alienation of estates being encumbered for an unreasonable period, and that the limitation was inefficacious where there had been no alienation of the lands by the owner. In *Morgan* v. *Comptroller of Elizabeth*, 15 *Vroom* 571, a tax levied in 1878, for which an invalid certificate of sale had been made, was relaid by this court in virtue of a later act passed in 1881 —the certificate of sale being set aside for its invalidity.

The office of certificates of sales in maintaining and continuing the lien for taxes becomes of consequence only where a change in title has intervened.

Sixth, whether a change in the ownership of lands at any time since assessments and taxes were originally levied thereon affects the power of the commissioners to re-assess the same.

The word " re-assess" does not describe, with entire accuracy, the duties and functions of these commissioners. The office of these officials is to affix, adjust and determine how much of the taxes, assessments and water rates previously assessed and levied ought, in fairness, equity and justice, to be charged upon and collected from the lands on which they were imposed.

. The proposition last stated presents the question of the power of the commissioners to include in their adjustment taxes and assessments where there has been a change in the ownership of the lands since the taxes and assessments were originally levied, and to subject such lands to sale for the payment of the same. That such a purpose is within the intent of the statute is clear. The topic for discussion is the power of the legislature to effectuate that purpose.

. That this power exists with respect to assessments for local improvements is indisputable. The liability of the lands for such assessments, as was said by Mr. Justice Knapp, " is not dependent upon the corporate action of the municipal government, but springs from the construction of an authorized public work, which confers a material, special benefit upon lands. It arises when the work is performed, and the assessment proceeding is merely the determination of the amount which, within the limit of such imparted value, shall be returned to the public. An unsuccessful attempt to levy this form of tax may be followed by a successful one that truly measures the burden which the lands are liable to bear." *Cross* v. *Hayes*, 16 *Vroom* 12–17 ; *S. C., Id.* 565. A change in the ownership of lands benefited by the improvement produces no effect upon the ability of the corporate authorities to make the assessment. The assessment when made, and a re-assessment if prior assessments are set aside, relate back to the time the improvement was begun. A purchaser taking title after that event takes subject to the power of the municipal body to make, and of the legislature to authorize, assessments and re-assessments, and the subsequent purchaser's title will be subject to these burdens whenever they may be imposed. *State* v. *Doyle*, 5 *Vroom* 236–243 ; *Cross* v. *Hayes, supra ; Fagan* v. *Cadmus,* 17 *Id.* 441 ; 18 *Id.* 549 ; *Tallman* v. *Janesville,* 17 *Wis.* 71 ; 2 *Dill. Mun. Corp.* (3d ed.), § 814. The charter of Elizabeth prescribes no limitation of time within which such assessments shall be made, nor limit upon the duration of the lien.

· Taxes for general purposes are upon a different footing. Such taxes are burdens laid upon persons or property for

governmental ends. The right to subject lands to a lien for the payment of these impositions does not spring from. a special benefit conferred upon the lands charged with the burden. The lien is wholly the creature of positive law.

The charter of Elizabeth makes taxes for general purposes assessed on persons or property a lien on the lands of the person against whom such taxes are assessed, but it prescribes a limit of two or four years, according to circumstances, for the duration of the lien. The charter also provides for the extension of the duration of this lien by a sale of the land at public auction, and a certificate of sale thereupon made and recorded as already mentioned. The lien of taxes, arising in virtue of the charter from the fact of the assessment, expires at the expiration of the time limited, and a certificate of sale, to be operative to continue the lien, must be made before the expiration of the period so limited. *Johnson* v. *Van Horn*, 16 *Vroom* 136.

If at a public sale within the limited period, for want of a purchaser willing to take the property and pay the amount of such taxes or assessments, with interest, costs and expenses, a certificate of sale be made to the city and recorded in the city clerk's office, the lien of the city is continued in full force, and will remain until the taxes are satisfied and extinguished by a declaration of sale duly made and recorded in the county clerk's office. This is clearly the legal import of sections 84 and 88 of the city charter.

The charter provides for redemption at any time before the declaration of sale is actually recorded. The terms of redemption are prescribed by section 87 to be payment, for the use of the purchaser, of the purchase money, together with any other tax or assessment chargeable on the premises which the purchaser may have paid, and any sum expended in any improvement made by order of the city council. By purchase money in this section is meant the tax or assessment for which the sale was made, and interest, costs and expenses ; for, by section 83, a sale to a third person could not be made except on a consideration made up of these charges. A purchaser may buy

for a less term of years than is prescribed by the charter, but not for any less or greater consideration than the taxes or assessments that were due.

Where property is struck off to the city at a sale for taxes, the city is the purchaser within the meaning of the eighty-seventh section. Otherwise there could in such cases be no redemption and no declaration of sale, for redemption is given against the purchaser, and the declaration of sale is to be made to the purchaser ; and it is inconceivable that the legislature should give to an individual purchaser a right of reimbursement for taxes accruing while he was holder of the certificate of sale, and intended to deny an equal right to the city under the same circumstances. Any imperfection there might have been in the city charter in that respect was removed by the general act of 1879, which dispensed with resales for taxes levied after that act took effect as a means of preserving the lien of such taxes.

The act of 1879 applies to certificates of sale made to the city as well before as after that act was passed. Under any of such certificates the city, in virtue of this statute, acquired a lien for taxes levied on the premises after that act took effect. Outstanding certificates of sale are valid warrants in the hands of the city for such subsequent taxes as well as those for which the sales were originally made, and all such taxes should be included by the commissioners in their adjustment without regard to any intermediate change in title. Certificates of sale made in 1879 for taxes assessed in 1878 are within this principle. No difficulty exists on this subject where the certificates of sale are in conformity with the charter in being made for the term of fifty years.

The question with respect to the effect of certificates of sale to continue the city's lien for taxes, as against subsequent owners, becomes of consequence only in those cases in which the certificates were made for a term longer than the charter designates.

At sales for taxes levied for the years from 1872 to 1878, inclusive lands were struck off to the city for unpaid taxes.

Through a misapprehension of the act of 1873 the comptroller made his certificates for the term of nine hundred years. At these public sales for taxes, the city is not a bidder in competition with others. The lands are struck off to the city for want of bidders, and then for the exact term of fifty years. Certificates of sale made to the city for a term greater than fifty years, as vouchers for the city's title, are invalid, and liable to be set aside on *certiorari*, or removed as clouds upon title. *Morgan* v. *Comptroller of Elizabeth*, 15 *Vroom* 571 ; *Schatt* v. *Grosch*, 4 *Stew. Eq.* 199 ; *Luddington* v. *Elizabeth*, 7 *Id.* 358 ; *Baldwin* v. *Elizabeth*, 15 *Id.* 11.

But these certificates of sale were, nevertheless, evidence that the premises had, in fact, been struck off to the city for the taxes mentioned in them. When sales are made to an individual purchaser, the designation of the term for which the premises were sold is a material part of the transaction, for such a purchaser buys for the term which he mentions in his bid. When "struck off to the city," the designation of the term in the certificate of sale, is a pure formality. The charter designates the term for which the city shall take.

These certificates were regularly recorded, and the record was notice to any proposed purchaser from the original owner that the premises had been struck off to the city. The city charter was notice that when premises are struck off to the city the term shall be fifty years. The reformation of deeds, mortgages and other encumbrances, as against subsequent purchasers, taking with such notice, is common in equity jurisprudence, and our courts of law have, on *certiorari*, exercised the powers of amendment in relation to taxes under the statute of 1881 (*Pamph. L., p.* 194), without any inquiry as to the then ownership of the premises. The power of the legislature over taxes, to amend informalities and cure defects that are substantial, is very extensive, and is broad enough to comprise the capacity to amend and cure a formal defect of this character. A purchaser having notice of such facts as the record of these certificates furnished took his title at the risk that the legislature might exercise its power to cure

such defects.    The legislative endeavor to re-establish against a subsequent purchaser a lien which had wholly lapsed before he took his title is quite a different exercise of power from that which is put in force in the amendment of certificates of a lien which are imperfect only in form.

The remaining questions can be answered briefly.    The legislative power to provide for re-assessment, or to validate assessments for benefits, where the original assessment was invalid because made under an unconstitutional law, is no longer an open question in this state.    There is no limitation of the time within which this shall be done.

*Johnson* v. *City of Trenton*, 14 *Vroom* 166, prescribed the rule to be adopted with respect to interest.

·  There was no need of any formal action to set aside the prior taxes and assessments preparatory to the action of the commissioners.    The jurisdiction and power to adjust are conferred on the commissioners.